FILED

July 18, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:40 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| JASON DUNN, | ) | Docket No.: 2016-03-0400 |
|     Employee, | ) | |
| v. | ) | |
| UNITED STATES | ) | |
| INFRASTRUCTURE, | ) | State File No.: 51258-2015 |
|     Employer, | ) | |
| and | ) | |
| LIBERTY MUTUAL INSURANCE | ) | Judge Lisa Lowe Knott |
| COMPANY, | ) | |
|     Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## GRANTING MEDICAL BENEFITS
### *(REVIEW OF FILE)*

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Jason Dunn, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Mr. Dunn's left shoulder complaints and need for surgery resulted from his right shoulder injury and resultant surgeries that arose primarily out of and in the course and scope of his employment.

Mr. Dunn requested the Court issue a ruling based on a review of the file without an evidentiary hearing. The employer, United States Infrastructure, voiced no objection. On June 27, 2016, the Court sent a Docketing Notice to the parties regarding the contents of the record before it and gave the parties until July 7, 2016, to voice any objection to the documents contained in the record or to offer additional evidence. Neither party raised any objection to the documents contained in the record or offered any additional evidence. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes it needs no further information to render judgment. For the reasons set forth below, the Court finds that Mr. Dunn is likely to

1

prevail at a hearing on the merits and his request for left shoulder surgery is granted.[1]

## History of Claim

Mr. Dunn is a thirty-eight-year-old resident of Blount County, Tennessee. United States Infrastructure (USI) employed Mr. Dunn as a utility worker.

On October 17, 2014, Mr. Dunn injured his right shoulder while lifting a manhole cover at work. He immediately reported the injury to USI. (Ex. 1.) On November 5, 2014, Mr. Dunn came under the care and treatment of authorized physician, Dr. Eric A. Morgan, who diagnosed a labral tear with rotator cuff and bicep tendinosis. Dr. Morgan performed surgery on Mr. Dunn's right shoulder in January and October 2015. (Ex. 6.) Mr. Dunn also attended multiple physical therapy sessions. (Ex. 8.)

In February 2015, Mr. Dunn began to experience problems with his left shoulder. Mr. Dunn reported these problems to Dr. Morgan, his physical therapist, Liberty Mutual Insurance Co., and the nurse case manager. Prior to the work injury at work, Mr. Dunn did not have problems or symptoms in either of his shoulders. (Ex. 1.)

Liberty Mutual authorized a left shoulder evaluation. Dr. Morgan diagnosed an over-compensation injury to the left shoulder, which resulted from the original right shoulder injury. Dr. Morgan further diagnosed a tear in the glenoid labrum of the left shoulder, left bicep tendonitis, and an incomplete tear of the left rotator cuff. (Exs. 1, 6.) After conservative treatment failed to improve Mr. Dunn's left shoulder complaints, Dr. Morgan recommended surgery, which utilization review approved but Liberty Mutual denied. (Ex. 4.)

On April 20, 2016, Mr. Dunn underwent an independent medical evaluation performed by Dr. Edward Kahn. Dr. Kahn noted the MRI showed evidence of tendonitis but not a frank tear. When asked about causation, Dr. Kahn concluded the left shoulder injury was age-related, not the result of a specific injury, and not caused by the October 17, 2014 work incident. (Ex. 9.)

In his affidavit, Mr. Dunn stated he did not have issues with either of his shoulders before he sustained the work-related right shoulder injury. He further claimed his left shoulder injury occurred because of the work-related right shoulder injury and he would not need left shoulder surgery but for his original injury. Mr. Dunn relied upon Dr. Morgan's March 10, 2016 letter wherein he opined Mr. Dunn's left shoulder condition is more likely than not causally related to the October 17, 2014 work injury and that the recommended surgery is reasonable and necessary. (Ex. 6.)

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

USI countered that Mr. Dunn has not met his burden of proof because Dr. Kahn opined Mr. Dunn's left shoulder was age-related and not related to the workplace injury. Dr. Kahn also replied "no" when asked if Mr. Dunn's employment contributed more than fifty percent in causing his left shoulder symptoms.

## Findings of Fact and Conclusions of Law

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, Mr. Dunn need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an Expedited Hearing, Mr. Dunn has the burden to come forward with sufficient evidence from which the trial court can determine that the he is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). An injury means "an injury be accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2015).

An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2015). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). An injury is shown to a reasonable degree of medical certainty if "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Generally, a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural

result of a compensable injury. *Anderson v. Westfield Group*, 259 S.W.3d 690, 696 (Tenn. 2008). Under the direct and natural consequences rule, "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment." 1 *Larson's Workers' Compensation Law* §10 (2004). Consequently, "all the medical consequences and sequelae that flow from the primary injury are compensable." *Id.* at § 10.01. The original compensable injury is deemed the cause of the damage flowing from the subsequent injury-producing event. *Anderson,* at 697. There is no question that the direct and natural consequences rule is an integral part of Tennessee's workers' compensation jurisprudence. *Id.*

USI accepted Mr. Dunn's right shoulder injury as compensable and authorized Dr. Morgan to provide medical treatment. USI further authorized Dr. Morgan's evaluation of Mr. Dunn's left shoulder and presumably paid for injections and therapy.

USI disputed Mr. Dunn's left shoulder injury. On July 13, 2015, Dr. Morgan noted Mr. Dunn's left shoulder "is still bothering him quite a bit and he has been having problems with the left shoulder since surgery of the right shoulder due to overcompensation with function." (Ex. 6) On March 10, 2016, in response to the question, "Based on the history given by Mr. Dunn, as well as your evaluation, are the medical conditions for which you have treated Mr. Dunn's left shoulder more likely than not casually related to the work place injury which occurred on October 17, 2014[?]," Dr. Morgan marked "YES." Additionally, Dr. Morgan wrote, "with immobility of [the] right shoulder, the left shoulder was subject to overuse and resultant problem." Dr. Morgan affirmed that the recommended left shoulder surgery is reasonable and necessary. *Id.*

In contrast, Dr. Kahn saw Mr. Dunn on one occasion for an IME. Dr. Kahn confirmed in his report that Mr. Dunn did not have any left shoulder complaints prior to the work injury. In response to questions submitted by Liberty Mutual, Dr. Kahn stated the following:

> In regards to his left shoulder it is likely that he has developed increased symptomatology secondary to having to use his left arm more than normal because of the injury to the right. However, this appears to be more inflammatory in nature and *should* respond to therapy and medication. (Emphasis added.) . . .In regards to Mr. Dunn's left shoulder, I have been asked to opine whether this was work-related or not. Clearly the findings on MRI scan are age-related and not the result of a specific injury. While it can be argued that the shoulder became symptomatic as a result of the injury and loss of use of his right shoulder, there was no specific injury to the left shoulder caused by the work-related incident of October 17, 2014.

Dr. Kahn noted Mr. Dunn's left shoulder *should* respond to therapy and

4

medications. However, earlier in his report, he recorded that Mr. Dunn received cortisone shots in his left shoulder and underwent physical therapy with no improvement. Dr. Morgan confirmed this in his January 5, 2016 letter to Liberty Mutual by stating, "[Mr. Dunn] has not made any progress from the non-operative treatment side of things, and at this point, is an appropriate surgical candidate." Dr. Kahn acknowledged Mr. Dunn did not have problems with his left shoulder prior to the work injury and developed symptoms due to having to use his left arm more after the work-related right shoulder injury. Dr. Kahn did not address whether the need for Mr. Dunn's left shoulder surgery was more than fifty percent related to overuse as a result of the October 17, 2014 right shoulder work-related injury.

When weighing expert medical proof, this Court has the discretion to determine which testimony to accept when presented with conflicting expert opinions. *See Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 335 (Tenn. Workers' Comp. Panel Sept. 5, 1996); *Johnson v. Midwesco, Inc.*, 801 S.W.2d 804, 806 (Tenn. 1990). Further, when there is conflicting medical testimony, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). In addition, it is reasonable that the physicians having greater contact with the employee would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one. *Id.* at 677.

In comparing the opinions of Dr. Morgan and Dr. Kahn, the Court places greater weight on Dr. Morgan's opinion. There is no dispute Mr. Dunn did not have any left shoulder complaints prior to the work injury. Dr. Morgan opined Mr. Dunn's left shoulder problem was caused by overuse/overcompensation due to the work-related right shoulder injury. The Court considers that opinion tantamount to saying the left shoulder problem was a direct and natural result of the work-related right shoulder injury and surgery. Mr. Dunn's left shoulder complaints did not improve with medication and therapy. Finally, Dr. Morgan opined the left shoulder surgery was reasonable and necessary, which Utilization Review confirmed. (Exs. 5, 6.)

After careful consideration of the evidence, the Court finds Mr. Dunn has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits. His request for the left shoulder surgery recommended by Dr. Morgan is granted.

**IT IS, THEREFORE, ORDERED** as follows:

1. USI or Liberty Mutual shall provide Mr. Dunn with medical treatment for his left shoulder injuries as required by Tennessee Code Annotated section 50-6-204

(2015), to be initiated by USI or Liberty Mutual authorizing/approving the left shoulder surgery recommended by Dr. Morgan.

2. This matter is set for an Initial (Scheduling) Hearing on September 7, 2016, at 10 a.m. eastern time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 18th day of July, 2016.**

_____
**HON. LISA LOWE KNOTT**
**Workers' Compensation Judge**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Lisa Lowe Knott, Court of Workers' Compensation Claims. The parties must call 865-594-0901 or toll free 855-383-0003 to participate in the Initial Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Technical Record:
- Petition for Benefit Determination, filed March 14, 2016;
- Dispute Certification Notice, filed April 7, 2016;
- Request for Expedited Hearing-On the Record Review, filed May 27, 2016
- Employer's Position Statement Exhibit List, filed June 2, 2016;
- Employee's Exhibit List, filed June 16, 2016; and
- Employee's Position Statement, filed July 7, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
- EXHIBIT 1: Affidavit of Jason Dunn;
- EXHIBIT 2: Affidavit of Earl Bolin;
- EXHIBIT 3: Wage Statement;
- EXHIBIT 4: Notice of Denial of Claims for Compensation, Form C23;
- EXHIBIT 5: Utilization Review Document;
- EXHIBIT 6: Medical Records of Dr. Eric Morgan;
- EXHIBIT 7: Medical Records of Blount Memorial Total Rehabilitation;
- EXHIBIT 8: Medical Records of Therapy Plus;
- EXHIBIT 9: Medical Records of Dr. Edward Kahn; and
- EXHIBIT 10: Medical Records of Outpatient Diagnostic Center of Knoxville.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 18th day of July, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Stacie Miller, Esq., R. Kim Burnette, Esq., Employee's Counsel | | | X | smiller@adhknox.com kburnette@adhknox.com |
| Eric Shen, Esq., Employer's Counsel | | | X | eric.shen@libertymutual.com |

PENNY SHRUM, Court Clerk
WCCourtClerk@tn.gov